**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES ex rel. UNDER SEAL,<br>Plaintiff[s],<br><br>v.<br><br>UNDER SEAL,<br>Defendant[s]. | Civil Action No.<br><br>JURY TRIAL DEMANDED<br><br>FILED IN CAMERA AND UNDER SEAL<br>PURSUANT TO 31 U.S.C. § 3730 |

**<u>FALSE CLAIMS ACT COMPLAINT</u>**

**<u>DO NOT ENTER ON PACER OR</u>**
**<u>OTHERWISE PLACE ON THE PUBLIC DOCKET</u>**

CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. BLACK ARROW STRATEGIES LLC,<br><br>Plaintiff/Relator,<br><br>v.<br><br>WIRELESS TELECOM GROUP, INC.,<br><br>Defendant. | Civil Action No.<br><br>JURY TRIAL DEMANDED<br><br>FILED IN CAMERA AND UNDER SEAL PURSUANT TO 31 U.S.C. § 3730 |

**COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT WITH JURY TRIAL DEMAND**

Black Arrow Strategies LLC, as relator on behalf of the United States of America, brings this action against Wireless Telecom Group, Inc. under the qui tam provisions of the False Claims Act, 31 U.S.C. § 3729 et seq., and alleges as follows:

## I. NATURE OF THE ACTION

1. This is a qui tam case, filed on behalf of the United States of America, seeking to recover approximately $6,262,375.32 in treble damages, plus civil penalties, from Wireless Telecom Group, Inc. ("Defendant") for fraudulently obtaining Paycheck Protection Program ("PPP") funds through false eligibility, necessity, public-issuer, and forgiveness certifications.

2. At all relevant times alleged below, Defendant was an issuer, the securities of which were listed on an exchange registered as a national securities exchange under section 6 of the Securities Exchange Act of 1934, 15 U.S.C. § 78f.

3. Publicly traded issuers with substantial market value and access to capital markets were unlikely to be able to make the good-faith necessity certification for First-Draw PPP loans. After December 27, 2020, publicly traded issuers were categorically ineligible for PPP loans.

4. Defendant nevertheless certified that "[c]urrent economic uncertainty" made its PPP loan request necessary to support its ongoing operations, even though the SBA and Treasury guidance made clear that a public company with substantial market value and access to capital markets was unlikely to be able to make that certification in good faith. *See* SBA/Treasury PPP FAQ 31 (April 23, 2020), https://perma.cc/5YVJ-R8VQ.

5. Despite that inability to make the required necessity certification in good faith in this case, Defendant applied for and received First-Draw PPP Loan No. 5455847706 in the amount of $2,044,935 on or about May 1, 2020 through Bank of America, National Association. Defendant later sought and obtained forgiveness of $2,067,009.09 on or about June 3, 2021, and the federal government also paid the lender a one percent processing fee of $20,449.35 associated with the loan.

6. Had Defendant not falsely certified eligibility and falsely certified that the loan was necessary, and had Defendant not repeated representations of eligibility and compliance in its forgiveness submission, it would not have received the loan or the forgiveness. The United States suffered actual damages of approximately $2,087,458.44 and treble damages of approximately $6,262,375.32.

## II. JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action seeks to redress violations of the False Claims Act, 31 U.S.C. § 3729 *et seq.*, and therefore arises under the laws of the United States. This Court also has subject-matter jurisdiction under 28 U.S.C. § 1345 because this action is brought in the name of the United States, and the real party in interest to the claims in this action is the United States.

8. This Court has personal jurisdiction over Defendant because Wireless Telecom Group, Inc. is a New Jersey corporation with its principal place of business at 25 Eastmans Road,

Parsippany, New Jersey 07054. *See, e.g.*, *United States ex rel. Miller v. Reckitt Benckiser Grp.*, 698 F. Supp. 3d 889, 905 (W.D. Va. 2023) (explaining that because the False Claims Act "contains a broad jurisdictional provision that permits nationwide service," personal jurisdiction hinges on minimum contacts with the United States as a whole); 31 U.S.C. § 3732(a).

9. Venue is proper in this District because Defendant can be found, resides, and transacts business within this District. 31 U.S.C. § 3732(a). Alternatively, venue is proper because a substantial part of the events or omissions giving rise to the claim occurred within this District. 28 U.S.C. § 1391(b)(2).

## III. PARTIES

10. The "real party in interest" to the claims in this action is the United States of America. *See United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 930 (2009).

11. Relator Black Arrow Strategies LLC is a company specializing in the investigation of misconduct and fraud relating to government contracts and programs.

12. Defendant Wireless Telecom Group, Inc. is a New Jersey corporation with its principal place of business at 25 Eastmans Road, Parsippany, New Jersey 07054.

## IV. DISCLOSURES

13. As required by 31 U.S.C. § 3730(b)(2), after filing this Original Complaint, Relator will serve an Original Disclosure Statement and a copy of this Original Complaint to the Attorney General of the United States and to the United States Attorney for the District of New Jersey, together with all material evidence and information in Relator's possession.

## V. THE FALSE CLAIMS ACT

14. The False Claims Act is the primary civil remedial statute designed to deter fraud upon the United States. Its purpose is to "enhance the Government's ability to recover losses

sustained as a result of fraud against the Government." S. Rep. No. 99-345, 1986 U.S.C.C.A.N. 5266, 5266.

15. Any individual or entity may bring violations of the False Claims Act to the government's attention by filing suit as a relator on behalf of the United States. 31 U.S.C. § 3730(b)(1). This includes companies that specialize in investigating and reporting fraud, which have been recognized by the Department of Justice as valuable partners in its fight against the misuse of public funds. *See, e.g.*, Press Release, U.S. Dep't of Justice, U.S. Att'y Off., D. Ariz., Country Club to Pay Over $630,000 to Resolve False Claims Act Allegations Relating to Improper Receipt of Paycheck Protection Program Loan (Nov. 13, 2024), https://perma.cc/UGX9-V2WF; Press Release, U.S. Dep't of Justice, U.S. Att'y Off., S.D. Cal., Nonprofit Organizations Pay Over $5.8 Million to Resolve Allegations of Fraudulently Obtaining Pandemic-Related Loans (June 12, 2024), https://perma.cc/L6V2-YCBR.

16. An entity or person violates the FCA when that entity or person "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A).

17. Under the FCA, a claim includes "any request or demand … for money" that is "presented to an officer, employee, or agent of the United States." *Id.* § 3729(b)(2). A claim is "false or fraudulent" under the FCA if the entity or person submitting the claim was not entitled to payment and the "misrepresentation about compliance" was "material to the Government's payment decision." *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 192 (2016).

18. In 2009, Congress amended the FCA to also make an entity or person liable if that entity or person "knowingly makes, uses, or causes to be made or used, a false record or statement

material to a false or fraudulent claim." Fraud Enforcement & Recovery Act of 2009, Pub. L. No. 111-21, 123 Stat. 1617, 1621 (2009) (codified at 31 U.S.C. § 3729(a)(1)(B)).

19. Under the FCA, the terms "knowing" and "knowingly" mean that the defendant either "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A). When words indicating knowledge - like "know," "knowledge," "knowingly," or words of similar import - are used in this complaint, they mean "knowingly" as defined in the FCA.

20. No "proof of specific intent to defraud" the Government is required to show that a defendant acted knowingly under the FCA. *Id.* § 3729(b)(1)(B).

21. The FCA defines the term "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." *Id.* § 3729(b)(4).

22. The FCA imposes treble damages plus a civil penalty for each violation of the statute. *Id.* § 3729(a)(1); 28 C.F.R. § 85.5(a), tbl. 1 (inflation-adjusted penalty amounts).

23. As of the date this complaint is filed, courts must assess a civil penalty in the inflation-adjusted range then applicable under 31 U.S.C. § 3729(a)(1), 28 C.F.R. § 85.5(a), tbl. 1, and the Civil Monetary Penalty Adjustments for Inflation notice in effect at the time of judgment.

24. False statements made in a loan application to a third-party lender qualify as "false claims" to the government where, as here, the loan is guaranteed by the federal government and the federal government later repays the lender. *See United States v. Van Oosterhout*, 96 F.3d 1491, 1494 (D.C. Cir. 1996).

## VI. WITH NARROW EXCEPTION, PUBLICLY TRADED ISSUERS WERE INELIGIBLE FOR FIRST-DRAW PPP LOANS

25. The PPP was established by the CARES Act to provide forgivable loans to eligible businesses and organizations affected by the COVID-19 pandemic. 15 U.S.C. § 636(a)(36).

26. To obtain a First-Draw PPP loan in 2020, the borrower, through an authorized representative, had to certify that the "[a]pplicant is eligible to receive a loan under the rules in effect at the time this application is submitted" and had to certify in good faith that "**[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.**" *See* PPP Borrower Application Form, SBA Form 2483 (April, 2020), at 2, https://perma.cc/N8QV-X93W (emphasis added).

27. On April 23, 2020, the SBA and Treasury issued FAQ 31, which explained that borrowers had to make the necessity certification in good faith, taking into account current business activity and the ability to access other sources of liquidity sufficient to support ongoing operations in a manner not significantly detrimental to the business. The SBA and Treasury further explained that it was "**unlikely that a public company with substantial market value and access to capital markets will be able to make the required certification in good faith**" and that such a company should be prepared to demonstrate the basis for its certification to the SBA upon request. *See* SBA/Treasury PPP FAQ 31 (April 23, 2020), https://perma.cc/5YVJ-R8VQ (emphasis added).

28. Upon the SBA's guidance that public companies likely did not qualify for PPP loans, many companies began returning their loans. *See* Kenny Herzog, *Which Public Companies Have Returned Their SBA PPP Loans? (Updated)*, Entrepreneur (last updated May 26, 2020), https://www.entrepreneur.com/growing-a-business/which-public-companies-have-returned-their-sba-ppp-loans/349848. Wireless Telecom Group, Inc. did not.

29. The SBA supplemented its final rules implementing the PPP loan program by granting a good faith safe harbor to any borrowers who applied for a PPP loan *and* who repaid the loan in full by May 7, 2020. 85 Fed. Reg. 23450, 23451 (Apr. 28, 2020) ("Limited Safe Harbor With Respect to Certification Concerning Need for PPP Loan Request"). The safe harbor was extended an additional week to May 14, 2020. 85 Fed. Reg. 29845, 29846 (May 19, 2020) ("Limited Safe Harbor With Respect to Certification Concerning Need for PPP Loan Request"). The safe harbor was extended a second and final time to May 18, 2020. 85 Fed. Reg. 31357, 31358 (May 26, 2020) ("Second Extension of Limited Safe Harbor With Respect to Certification Concerning Need for PPP Loan Request").

30. Any borrowers who did not return their First-Draw PPP loan by May 18, 2020, are thus not extended the safe harbor and must meet the requirement that its application and later forgiveness for a First-Draw PPP loan was made in good faith (i.e., by demonstrating the loan was *necessary* to continue business operations).

31. Congress later amended the PPP loan program through the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act to make publicly traded businesses categorically ineligible for any loans issued on or after December 27, 2020. *See* 15 U.S.C. § 636(a)(36)(D)(viii) ("Ineligibility of publicly-traded entities").

32. Accordingly, for First-Draw loans made before December 27, 2020, status as a publicly traded business was not a categorical bar to a PPP loan. Instead, a publicly traded business was ineligible for a PPP loan if it could not make a good-faith certification that its financial resources, including market value, cash, liquidity, and access to capital markets, were insufficient to continue operations without a PPP loan.

33. Thus, for First-Draw loans made before December 27, 2020, a public company with substantial market value and access to capital markets could not truthfully make the good-faith necessity certification absent facts demonstrating that the loan was necessary notwithstanding other financial resources at the business's disposal.

## VII. FACTUAL ALLEGATIONS

### A. Wireless Telecom Group, Inc. Was Publicly Traded With Substantial Market Value and Access to Capital Markets.

34. At the time of the PPP application, Wireless Telecom Group, Inc. was an issuer whose common stock traded publicly on NYSE American under ticker symbol WTT. Defendant's SEC filings identified its Central Index Key as 0000878828 and its securities as registered on NYSE American pursuant to Section 12(b) of the Securities Exchange Act. *See* Wireless Telecom Group, Inc., Quarterly Report (Form 10-Q), at cover page (filed May 14, 2020), https://www.sec.gov/Archives/edgar/data/878828/000149315220008425/form10-q.htm. That public listing gave Defendant access to public equity markets unavailable to ordinary small businesses for which the PPP was designed.

35. Wireless Telecom Group, Inc. had 21,647,571 shares of common stock outstanding as of May 1, 2020, the date the PPP loan was approved. *Id.* On information and belief, Defendant's market capitalization on or about the PPP approval date was approximately $20 million to $26 million, based on share-price data points disclosed in the company's own SEC filings for the surrounding period. *See* Wireless Telecom Group, Inc., Annual Report (Form 10-K), at Notes 3 and 10 (filed Mar. 19, 2021), https://www.sec.gov/Archives/edgar/data/878828/000149315221006365/form10-k.htm. Defendant's First-Draw PPP loan of $2,044,935 represented approximately 8% to 10% of Defendant's market capitalization.

36. As of March 31, 2020, the closest reported period before the PPP application, Defendant reported approximately $3.2 million in cash and cash equivalents. *See* Wireless Telecom Group, Inc., Press Release (Ex. 99-1 to Form 8-K) (filed May 13, 2020), https://www.sec.gov/Archives/edgar/data/878828/000149315220008428/ex99-1.htm. By comparison, as of December 31, 2019, Defendant had reported $4.245 million in cash and cash equivalents. *Id.* Defendant's cash alone exceeded the $2,044,935 PPP loan amount.

37. At or near the time of the PPP application, Defendant also had access to capital markets through an active $40 million Form S-3 shelf registration statement, filed August 27, 2018, declared effective September 17, 2018, and not expiring until September 17, 2021. Defendant described this shelf as "intended to provide financial flexibility to access capital in a competitive and expeditious manner when market conditions are appropriate." *See* Wireless Telecom Group, Inc., Annual Report (Form 10-K), at Liquidity and Capital Resources (filed Mar. 19, 2021), https://www.sec.gov/Archives/edgar/data/878828/000149315221006365/form10-k.htm. Defendant did not issue any securities under the shelf during 2020. *Id.* The shelf's $40 million capacity was nearly twenty times the $2,044,935 PPP loan.

38. In addition, Defendant maintained a revolving credit facility with Bank of America providing up to $9.0 million, subject to a borrowing-base calculation, with approximately $1.7 million available as of March 31, 2020 and $5.0 million available as of June 30, 2020. *Id.*

39. During the relevant PPP loan period, Defendant continued operating as an "essential business" serving telecommunications infrastructure, U.S. government, and defense subcontractor customers. *See* Wireless Telecom Group, Inc., Annual Report (Form 10-K), at Business (filed Mar. 19, 2021), https://www.sec.gov/Archives/edgar/data/878828/000149315221006365/form10-k.htm ("The

Company was able to continue operations at our manufacturing facilities in Parsippany, N.J. and Boulder, Colorado locations as an "essential business" due to the industries and customers we serve including critical telecommunications infrastructure, the U.S. government and numerous global aerospace and defense subcontractors that supply the U.S. government.").

40. Defendant's business was in a healthy position during the PPP loan period. As of June 30, 2020, the company remained in compliance with all financial debt covenants under its revolving credit facility. *See* Wireless Telecom Group, Inc., Quarterly Report (Form 10-Q), at 22 (filed Aug. 13, 2020), https://www.sec.gov/Archives/edgar/data/878828/000149315220015410/form10-q.htm. For the full year 2020, Defendant generated $3.0 million in cash from operations and ended the year with $4.9 million in cash and $7.2 million in available revolver capacity. *See* Wireless Telecom Group, Inc., Annual Report (Form 10-K), at Liquidity and Capital Resources (filed Mar. 19, 2021), https://www.sec.gov/Archives/edgar/data/878828/000149315221006365/form10-k.htm.

41. Defendant received the PPP loan proceeds on May 4, 2020. *See* Wireless Telecom Group, Inc., Current Report (Form 8-K), Item 1.01 (filed May 7, 2020), https://www.sec.gov/Archives/edgar/data/878828/000149315220007941/form8-k.htm. The SBA's good-faith safe harbor allowed borrowers to repay their PPP loans in full by May 18, 2020, with no adverse consequences. Defendant did not repay by the safe harbor deadline. Instead, Defendant retained the full $2,044,935 and later obtained forgiveness of $2,067,009.09, including accrued interest, on June 3, 2021. *See* SBA/Treasury PPP FAQ 31 (April 23, 2020), https://perma.cc/5YVJ-R8VQ; ProPublica, Tracking PPP: Wireless Telecom Group Inc, https://projects.propublica.org/coronavirus/bailouts/loans/wireless-telecom-group-inc-5455847706.

**B. Wireless Telecom Group, Inc. Applied For, Received, and Later Sought Forgiveness of a First-Draw PPP Loan Despite Its Ineligibility and False Necessity Certification.**

42. As described above, Defendant did not need a PPP loan to continue its business operations due to the COVID-19 pandemic. Despite this, Defendant applied for and received First-Draw PPP Loan No. 5455847706 in the amount of $2,044,935 on or about May 1, 2020 through Bank of America, National Association. The loan was later forgiven in the amount of $2,067,009.09 on or about June 3, 2021. *See* ProPublica, *Tracking PPP: Wireless Telecom Group Inc*, https://projects.propublica.org/coronavirus/bailouts/loans/wireless-telecom-group-inc-5455847706. The federal government also paid the lender a one percent processing fee of $20,449.35 for the loan. *See* SBA Procedural Notice 5000-20028, Paycheck Protection Program Lender Processing Fee Payment and 1502 Reporting Process (2020), https://perma.cc/T3VU-RGSB.

43. To obtain PPP Loan No. 5455847706, Defendant, through an authorized representative, was required to submit SBA Form 2483, or a lender-equivalent First-Draw borrower application. That application required the signer to certify that "[a]pplicant is eligible to receive a loan under the rules in effect at the time this application is submitted ...." The application also required the signer to certify in good faith that "**[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.**" See PPP Borrower Application Form, SBA Form 2483 (April, 2020), at 2, https://perma.cc/N8QV-X93W.

44. Defendant could not make this certification in good faith because it was a public company with substantial market value, had liquid assets including cash that materially exceeded the value of the PPP loan, and had access to capital markets and a line of credit. Defendant's eligibility certification that it was *necessary* to obtain the PPP loan to support its ongoing operations was false when made.

45. To obtain forgiveness of PPP Loan No. 5455847706, Defendant, through an authorized representative, was required to submit SBA Form 3508 or a lender-equivalent forgiveness application. That submission required the signer to certify the truth and correctness of the request and acknowledge that SBA could deny forgiveness if the borrower was ineligible for the PPP loan. See PPP Loan Forgiveness Application Form, SBA Form 3508, at 2-3, https://perma.cc/K9KJ-7STJ; PPP Loan Forgiveness Application Form 3508EZ, SBA Form 3508EZ, at 2; PPP Loan Forgiveness Application Form 3508S (10/20), at 1.

46. Defendant acted with complete knowledge, deliberate ignorance, or reckless disregard to the truth that Defendant's financial condition made it categorically ineligible for a PPP loan. Defendant's own SEC filings, investor disclosures, exchange listings, and other public materials reflected its public-company status, liquidity, cash, access to capital markets, access to credit, and securities-exchange listing.

47. Public reporting and SBA guidance further support Defendant's knowledge, deliberate ignorance, or reckless disregard, of its fraudulent activity. By April 23, 2020, the SBA's issuance of FAQ 31, which was prompted by widespread press coverage and public criticism of publicly traded companies' receipt of PPP funds, had put the marketplace on notice that public companies with substantial market value and access to capital markets were unlikely to make the "necessary" certification in good faith. *See* SBA/Treasury PPP FAQ 31 (Apr. 23, 2020) https://perma.cc/5YVJ-R8VQ; Marco Rubio (@marcorubio), X (formerly Twitter) (Apr. 20, 2020) ("The certification language in #PPP is real & enforceable . . . That is why any company (of any size) that hasn't been harmed by the current economic conditions & nevertheless applies for & receives #PPP has a big problem"), https://perma.cc/9CUN-MPLW; Ed Zollars, *SBA Adds Question and Answer to PPP FAQ Regarding Certification of the Loan Being Necessary*,

CURRENT FEDERAL TAX DEVELOPMENTS (Apr. 23, 2020), https://perma.cc/4H27-M9VF; *Heightened Scrutiny for Public Companies and Portfolio Companies of Funds for PPP Loans*, LOWENSTEIN SANDLER LLP (Apr. 24, 2020), https://perma.cc/8SH3-AJ98.

48. Indeed, based on information and belief, Defendant acted with actual knowledge, deliberate ignorance, or reckless disregard of its ineligibility for a PPP loan and had an opportunity to pay back the loan during the safe harbor period by May 18, 2020. Instead, Defendant chose to use the PPP loan to its material benefit and affirmatively sought forgiveness rather than pay the loan off with interest.

49. At a minimum, Defendant acted with actual knowledge, deliberate ignorance, or reckless disregard when it caused an authorized representative to certify PPP eligibility, certify necessity, and later seek forgiveness on a loan Defendant was never entitled to obtain or retain. *See* 31 U.S.C. § 3729(b)(1)(A).

50. By submitting both the borrower application and the forgiveness submission, Defendant falsely certified that it was eligible for a First-Draw PPP loan and PPP-loan forgiveness even though, as applicable, Defendant could not truthfully make the required good-faith necessity certification.

## COUNT ONE

### Presenting False Claims for Payment
### 31 U.S.C. § 3729(a)(1)(A)

51. Relator realleges and incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein.

52. Defendant knowingly presented or caused to be presented false or fraudulent claims for payment or approval to the United States Government for a First-Draw PPP loan, and for forgiveness of any such loan, in violation of 31 U.S.C. § 3729(a)(1)(A).

53. Specifically, each of the following application and forgiveness submissions was a "claim" presented to the United States (through the SBA or its agents), and each was false because Defendant could not likely make the required good-faith necessity certification for First-Draw PPP funds yet certified otherwise.

54. For Wireless Telecom Group, Inc.:

a. *First-Draw Loan Application*: On or about May 1, 2020, Wireless Telecom Group, Inc. submitted a First-Draw PPP loan application and falsely certified that "[c]urrent economic uncertainty" made the loan request "necessary" to support its ongoing operations, even though Defendant was a public company with substantial market value and access to capital markets and could not likely make that certification in good faith. *See* SBA/Treasury PPP FAQ 31 (April 23, 2020), https://perma.cc/5YVJ-R8VQ.

b. *First-Draw Loan Forgiveness*: Some time before June 3, 2021, Wireless Telecom Group, Inc. submitted a PPP forgiveness application and again falsely certified its compliance and eligibility. The SBA approved the loan forgiveness, totaling $2,067,009.09.

55. Each PPP loan application described above was a "claim" under the FCA because it was a "request or demand … for money or property … that" was "presented to an officer, employee, or agent of the United States" (namely, to PPP lenders acting on SBA's behalf) or, alternatively, to a "contractor, grantee, or other recipient" to be reimbursed by the United States. 31 U.S.C. § 3729(b)(2)(A)(i)-(ii).

56. Each PPP forgiveness application described above was likewise an additional "claim" under the FCA because Defendant further requested or demanded money or property from

the United States through SBA, and forgiveness was conditioned on renewed eligibility and compliance certifications. *Id.* § 3729(b)(2)(A).

57. At the time of the false statements and presentments, Defendant knew these statements were false because it had "actual knowledge of" the facts establishing its ineligibility, "acted in deliberate ignorance of the truth or falsity of" those facts, or "acted in reckless disregard of the truth or falsity of" those facts. *Id.* § 3729(b)(1)(A).

58. The United States—unaware of the material falsity of the claims made or caused to be made by Defendant—approved, paid, and participated in payments made by the United States' agents (PPP lenders) for loans that were not permitted under law and, as applicable, in loan forgiveness that was not permitted under law.

59. Because of these payments, approvals, and/or loan forgiveness, the United States has been damaged in an amount of approximately:

| | |
|---|---|
| First-draw loan total amount forgiven (including interest) | $2,067,009.09 |
| First-draw loan processing fee | $20,449.35 |
| **Total actual damages** | **$2,087,458.44** |

60. The United States is entitled to treble damages plus a civil monetary penalty for each false claim. *See* 31 U.S.C. § 3729(a)(1); 28 C.F.R. § 85.5.

## COUNT TWO

### Making or Using False Records or Statements
### 31 U.S.C. § 3729(a)(1)(B)

61. Relator realleges and incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein.

62. Defendant knowingly made, used, or caused to be made or used false records or statements that were material to false or fraudulent claims paid or approved by the United States, in violation of 31 U.S.C. § 3729(a)(1)(B).

63. Specifically, each of the following application and forgiveness submissions included false statements about eligibility, public-issuer status, necessity, and entitlement to loan forgiveness, and each was presented to the United States (through the SBA or its agents).

64. For Wireless Telecom Group, Inc.:

a. *First-Draw Loan Application*: On or about May 1, 2020, Wireless Telecom Group, Inc. submitted a First-Draw PPP loan application and falsely certified that "[c]urrent economic uncertainty" made the loan request "necessary" to support its ongoing operations, even though Defendant was a public company with substantial market value and access to capital markets and could not likely make that certification in good faith. *See* SBA/Treasury PPP FAQ 31 (April 23, 2020), https://perma.cc/5YVJ-R8VQ.

b. First-Draw Loan Forgiveness: Some time before June 3, 2021, Wireless Telecom Group, Inc. submitted a PPP forgiveness application and again falsely certified its compliance and eligibility. The SBA approved the loan forgiveness, totaling $2,067,009.09.

65. At the time of the false statements, Defendant knew that these statements were false because Defendant either had "actual knowledge of" the facts establishing its ineligibility, acted in deliberate ignorance of the truth or falsity of those facts, or acted in reckless disregard of the truth or falsity of those facts. *Id.* § 3729(b)(1)(A).

66. False statements by Defendant under this Count were material to the false and fraudulent claims for approval, payment, and forgiveness that Defendant made or caused to be made to the United States or its agents.

67. The United States—unaware of the material falsity of the claims made or caused to be made by Defendant—approved, paid, and participated in payments made by the United States' agents (the financial institutions dispensing loans) for loans that were not permitted under law, and later in loan forgiveness that was not permitted under law.

68. But for Defendant having made and used these materially false statements, the United States and its agents would not have approved, paid, or forgiven Defendant's PPP loan.

69. Because of these false and fraudulent statements that Defendant made, used, or caused to be made or used, the United States has been damaged in an amount of approximately:

| | |
|---|---|
| First-draw loan total amount forgiven (including interest) | $2,067,009.09 |
| First-draw loan processing fee | $20,449.35 |
| **Total actual damages** | **$2,087,458.44** |

70. The United States is entitled to treble damages plus a civil monetary penalty for each false claim. *See* 31 U.S.C. § 3729(a)(1); 28 C.F.R. § 85.5.

## PRAYER FOR RELIEF

WHEREFORE, Relator prays for judgment against Wireless Telecom Group, Inc. for:

a. Three times the amount of damages that the United States has sustained. Relator calculates that the United States has sustained approximately $2,067,009.09 in actual damages. Relator thus anticipates, at this point in time, that the United States' treble damages are approximately: $6,262,375.32.

b. The maximum civil penalties allowed by law under 31 U.S.C. § 3729(a);

c. An award to Relator for the maximum allowed under 31 U.S.C. § 3730(d);

d. An award to Relator for attorneys' fees, costs, and expenses;

e. Interest as provided by law; and

f. Any other relief that this Court deems appropriate.

**JURY DEMAND**

Relator demands a trial by jury on all claims and issues so triable.

Dated: July 23, 2026

Respectfully submitted,

*/s/ Mark K. Svensson*
Mark K. Svensson (NJ Bar No. 380202021)
**MILBERG, PLLC**
405 East 50th Street
New York, New York 10022
Tel.: (202) 975-0468
msvensson@milberg.com

Philip J. Krzeski (pro hac vice forthcoming)
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Phone: (612) 339-7300
Fax: (612) 336-2940
pkrzeski@chestnutcambronne.com

*Attorneys for Relator Black Arrow Strategies LLC*